**HUDSON COUNTY CARPENTERS LOCAL UNION NO. 6, Carpenters Local Union No. 6 Benefit Funds, and Zazzali, Fagelli & Nowak, P.A., Plaintiffs,**

v.

**V.S.R. CONSTRUCTION CORP., V.S.R. Construction, V.S.R. Construction Specialties, V.S.R. Construction Specialties, Inc., V.S.R. Construction, Inc., Melcon Construction Corp., Vista Drywall, Vincent Mauro, and Randi Mauro, Defendants.**

No. C.A. 99–6032(DRD).

United States District Court,
D. New Jersey.

Dec. 29, 2000.

567

Aileen M. O'Driscoll, Zazzali, Fagella & Nowak, Newark, NJ, for Plaintiffs.

Mark I. Chinitz, Stein Riso Mantel Haspel & Jacobs, L.L.P. Chatham, NJ, for Movant Defendants, V.S.R. Construction Specialties, Inc., Vista Drywall Corp., Vincent Mauro, and Randi Mauro.

## OPINION

DEBEVOISE, Senior District Judge.

Plaintiffs in this action are a labor union, its pension and welfare trust funds, and the law firm that represents them. Alleging alter ego, single employer, successorship, common control, and veil piercing theories of liability, plaintiffs filed this action to recover judgments owed to them by defendants V.S.R. Construction Corp. and Melcon Construction Corp. ("the judgment defendants"). The judgments were incurred as a result of the judgment defendants' failure to make contributions to the trust funds as required by the terms of collective bargaining agreements entered into by the parties. Defendants V.S.R. Construction Specialties, Vista Drywall Corp., Vincent Mauro, and Randi Mauro ("the non-judgment defendants") move to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. For the reasons set forth herein, the non-judgment defendants' motion will be granted as to defendants Vincent Mauro and Randi Mauro, and denied as to the corporate defendants.

### STATEMENT OF FACTS

Plaintiff Hudson County Carpenters Local Union No. 6 ("the Union") is an unincorporated labor organization. Plaintiffs Carpenters Union Local No. 6 Benefit Funds ("the Funds") are unincorporated, multiemployer pension and welfare trust funds subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff Zazzali, Fagella & Nowak ("the Firm") is a law firm that represents the Union and the Funds.

Under the collective bargaining agreements[1] and two individuated "short form agreements" that incorporate the collective bargaining agreements (collectively, the "CBA"), the judgment defendants agreed to make fringe benefit contributions to the Funds on behalf of employees covered by the CBA. The judgment defendants failed to fulfill their obligations under the CBA, which precipitated the three arbitration awards entered against them. Plaintiffs sought to confirm the arbitration awards in three civil actions filed in this Court, and obtained three judgments against the judgment defendants as follows:

| Civil Action No. | Judgment Defendant | Date of Judgment | Amount of Judgment |
| --- | --- | --- | --- |
| 97–1137 | V.S.R. Constr. | May 20, 1997 | $67,051.11 |
| 98–4485 | Melcon Constr. | Nov. 2, 1998 | $ 8,596.48 |
| 99–0620 | V.S.R. Constr. | Mar. 20, 1999 | $50,109.06 |

---

1. Effective March 1, 1995, the New Jersey State Council of Carpenters of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, of which the Union is a part, entered into a collective bargaining agreement with the Building Contractors Association of New Jersey. The agreement was superseded by a collective bargaining agreement that took effect on May 1, 1997 and remained effective through April 30, 2000. The relevant provisions of these collective bargaining agreements are identical in their legal effect.

To date, none of these judgments has been satisfied by the judgment defendants.

None of the non-judgment defendants was a party to the CBA, and none of them is named in the judgments entered in favor of the plaintiffs. In their First Amended Complaint, however, plaintiffs allege that V.S.R. Construction, V.S.R. Construction Specialties, V.S.R. Construction Specialties, Inc., V.S.R. Construction, Inc., and Vista Drywall Corp. are alter ego or successor companies to, or joint and single employers with, the judgment defendants. First Amended Complaint at ¶ 22. Plaintiffs further allege that the individual defendants, Vincent and Randi Mauro, are principals of the corporate entities and have failed to follow corporate formalities with the intent of evading the obligation to make contributions to the Funds and to avoid satisfaction of the judgments. First Amended Complaint at ¶ 23. Applying these theories, plaintiffs seek to establish liability against the defendants for the unsatisfied judgments.

## DISCUSSION

### Subject Matter Jurisdiction

■ Plaintiffs assert two possible bases for subject matter jurisdiction. First, they argue that jurisdiction may be invoked pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"), which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Second, they claim jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 provides federal district courts with jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. § 185(a). As already noted, plaintiffs and the judgment defendants are parties to the CBA within the meaning of ERISA § 515 and LMRA § 301. It is well-established that the failure to make contributions to a union trust fund as required by a collective bargaining agreement constitutes a violation of ERISA § 515 and a violation of LMRA § 301. *Mass. State Carpenters Pension Fund v. Atlantic Diving Co.*, 635 F.Supp. 9, 10–11 (D.Mass.1984); *Composition Roofers Union Local No. 30 Welfare Trust Fund v. Jackel Servs. Corp.*, 1998 WL 32608 (E.D.Pa.); *Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Nordic Indus.*, 1997 WL 83742 (E.D.Pa.).

The non-judgment defendants, who view this case merely as an action to enforce the judgments against them, contend this court lacks subject matter jurisdiction under the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). In *Peacock*, Thomas brought an ERISA action against his corporate employer and an individual officer and shareholder of the corporation, Peacock, for benefits due to him under his employer's pension benefits plan. 516 U.S. at 351, 116 S.Ct. 862. The district court held Peacock was not a fiduciary, and judgment was entered against the corporation only. *Ibid.* Thomas was unable to collect, however, because Peacock had siphoned off corporate assets to prevent satisfaction of the judgment. *Id.* at 352, 116 S.Ct. 862. Thomas then filed a second suit against Peacock, asserting a cause of action for piercing the corporate veil "under ERISA and applicable federal law." *Ibid.* The district court awarded judgment in favor of Thomas and the Court of Appeals for the Fourth Circuit affirmed. *Ibid.*

The Supreme Court reversed, finding a lack of subject matter jurisdiction under either ERISA or the federal courts' ancil-

lary jurisdiction. 516 U.S. at 352–59, 116 S.Ct. 862. As to the first point, the Court observed that "[p]iercing the corporate veil is not itself an independent ERISA cause of action," and that Thomas' failure to allege an underlying ERISA violation left the court without jurisdiction to hear his suit. *Id.* at 354, 116 S.Ct. 862. As to the second point, the Court rejected Thomas's argument that the second suit fell within the district court's ancillary jurisdiction to enforce its earlier judgment, stating that "[t]he court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." *Id.* at 355, 116 S.Ct. 862. "[C]laims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit." *Ibid.* (emphasis added). In conclusion, the Court stated that "[w]e have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357, 116 S.Ct. 862.

The impact of *Peacock* on cases like the one presently before the court was addressed by the Court of Appeals for the Seventh Circuit in *Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.,* 85 F.3d · 1282 (7th Cir. 1996). In that case, as in this action, the plaintiff pension fund obtained judgments for unpaid pension fund contributions. 85 F.3d at 1284. The judgments remained unsatisfied and the plaintiff brought a subsequent lawsuit against two additional companies, averring that they were alter egos of the judgment defendants. *Ibid.* In affirming a judgment in favor of the plaintiff, the Seventh Circuit distinguished *Peacock* as a case in which the plaintiff sought to pierce the corporate veil to reach a corporate officer without alleging of the officer's liability for the underlying ERISA violation. *Id.* at 1286. Noting the distinction between "common control" and "veil-piercing," the Seventh Circuit remarked that the plaintiff in *Central States*

has styled its theory of liability somewhat differently, alleging that the [the alter ego defendants] so dominated and controlled [the judgment defendants] that they were the "true employers" for purposes of ERISA liability ... Under this theory, [plaintiff] is claiming that [the alter ego defendants] played a part in the initial ERISA violation. Thomas' lawsuit attempted to "pierce the corporate veil." By contrast, [plaintiff] claims that the defendants exercised "common control." The former can be characterized more generally as a suit to enforce a judgment, while the latter is a specific claim under ERISA.

85 F.3d at 1286. "The resulting legal landscape distinguishes 'common control,' which seeks to establish a new defendant's primary liability for the underlying ERISA violation, from 'veil-piercing,' which merely establishes vicarious liability for the original judgment." *Id.* at 1286–87; *see also Board of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1038 (7th Cir.2000) (noting that efforts to pierce the corporate veil seek to establish vicarious liability, "but a contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct."). "As a basis for federal jurisdiction, veil-piercing is dead after *Peacock." Central States,* 85 F.3d at 1287. *See also Thomas, Head & Greisen Employees Trust v. Buster,* 95 F.3d 1449, 1454 n. 7 (9th Cir.1996) ("*Peacock* suggested that whether a judgment creditor's post-judgment action is within a federal district court's ancillary enforcement jurisdiction hinges on whether it seeks not merely 'to **collect** a judgment' but also 'to establish liability' on the part of the third party.") (emphasis in original); *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.,* 104 F.3d 1050, 1055 and n. 6 (8th Cir.1997) (approving use of alter ego theory to establish ERISA liability but noting that after *Peacock* a plaintiff may not attempt to enforce an ERISA judgment against an

individual not liable for the underlying ERISA violation).

The same result has been reached by at least three other district courts, including two in the Third Circuit. In *Boilermaker–Blacksmith Nat'l Pension Fund v. Gendron*, 96 F.Supp.2d 1202 (D.Kan.2000), plaintiff pension funds holding an uncollected judgment for benefit contributions brought a subsequent suit against five defendants alleged to be alter egos of the judgment debtor. The court held that the plaintiffs' lawsuit "was not an attempt to collect the prior judgment" but was framed as an action under ERISA "seeking to hold defendants liable as alter egos for contribution obligations that they allegedly incurred while operating as [the judgment debtor] ... and under other aliases." 96 F.Supp.2d at 1214 (citing *Greater Kan. City Laborers*). *See also Boilermaker–Blacksmith Nat'l Pension Fund v. Gendron*, 67 F.Supp.2d 1250 (D.Kan.1999).

Likewise, in *Composition Roofers Union Local No. 30 Welfare Trust Fund v. Jackel Servs. Corp.*, 1998 WL 32608 (E.D.Pa.), union pension funds unable to collect from a judgment debtor brought a separate civil action against other defendants, alleging an alter ego theory under both ERISA and LMRA § 301. Noting that "[t]he alter ego doctrine is designed to defeat an employer's attempts to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations," the court found that two of the corporations were indeed alter

egos of the judgment debtor and that each "is liable as if it were a signatory to the collective bargaining agreements ... for any breach ... in violation of the LMRA as well as under ERISA." *Id.* at \*2, \*4, \*6.[2] *See also Nordic Indus.* (plaintiff could proceed with ERISA claim against corporate defendant, on an alter ego theory, for breach of agreement to make contributions to union benefit plan).

 The distinction between an alter ego theory establishing direct liability for an ERISA violation and a veil piercing theory establishing vicarious liability for an ERISA judgment is readily apparent in this case, which presents both theories. Plaintiffs have alleged that each of the corporate non-judgment defendants operated as an alter ego of the judgment defendants. First Amended Complaint at ¶ 22. At this stage of the proceedings, plaintiffs' complaint is sufficient to confer subject matter jurisdiction and to state a cause of action against each of the corporate non-judgment defendants. *See General Teamsters, Chauffeurs & Helpers, Local Union No. 249 v. Bill's Trucking, Inc.*, 493 F.2d 956 (3rd Cir.1974) (reversing judgment of district court where an issue of fact remained as to "whether there existed an identity or continuity of enterprise between the employer and the alleged successor company"); *Nordic Indus.* (allegations that defendant was the alter ego of a party to the collective bargaining agreement sufficient to confer subject matter jurisdiction).[3] There is no independent ba-

---

**2.** *Composition Roofers*, like *Central States*, explicitly recognized the distinction between the alter ego theory and the concept of piercing the corporate veil to reach individual defendants; although two of the defendant corporations were held liable on an alter ego theory, the court found insufficient evidence for piercing the corporate veil to reach individual officers and shareholders. 1998 WL 32608 at \*4 n. 9, \*6, n. 16.

**3.** In addition to providing an independent jurisdictional basis under ERISA, plaintiffs' alter ego claims in this case establish jurisdiction under § 301 of the LMRA. The non-judgment defendants contend that suits under § 301 are

limited to the signatories of a collective bargaining agreement, but this argument has been rejected by the courts on numerous occasions. *See, e.g., General Teamsters* (successor corporation, although not a signatory to the collective bargaining agreement, could be held liable for breach under § 301); *Metro D.C. Paving, Highway & Constr. Materials Council, AFL–CIO v. Roubin & Janeiro, Inc.*, 1981 WL 2392, 1981 U.S. Dist. LEXIS 10118 (D.D.C.) (allegation that defendant was the alter ego of signatory sufficient to state a claim for breach and to establish jurisdiction under § 301); *Mass. State Carpenters* (finding ERISA and § 301 jurisdiction over individual

sis, however, for jurisdiction over the individual defendants. Neither is alleged to be an alter ego of the judgment defendants; the allegations against the individual defendants are limited to claims that they "failed to follow corporate formalities" such that "plaintiffs are entitled to pierce the corporate veil." First Amended Complaint at ¶ 23–24. These allegations fail to establish a cause of action under either ERISA or the LMRA, and there is accordingly no jurisdiction thereunder. *See Peacock,* 516 U.S. at 354, 116 S.Ct. 862; *Central States,* 85 F.3d at 1286–87.

◼ The individual defendants are however, subject to the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Unlike *Peacock,* where there was no original jurisdiction to supplement, in this case there is a present case or controversy under both ERISA and § 301 of the LMRA. Where there is original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ... such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a); *Peacock,* 516 U.S. at 355, 116 S.Ct. 862 ("Ancillary jurisdiction may extend to claims having a factual and logical dependence on 'the primary lawsuit,' but that primary lawsuit must contain an independent basis for federal jurisdiction.") (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)). Thus, the Court has subject matter juris-

diction with respect to each of the defendants.

### *Personal Jurisdiction*

The non-judgment defendants argue further grounds to dismiss this action exist under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over the non-judgment defendants. The affidavits of Vincent and Randi Mauro, they contend, establish that the non-judgment defendants lack minimum contacts with the State of New Jersey.

◼ As to the corporate non-judgment defendants, this argument fails for two reasons. First, the corporate non-judgment defendants are alleged to have violated ERISA, a federal statute that provides for nationwide service of process. *See Elite Erectors,* 212 F.3d at 1035; *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822 (5th Cir.1996); *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1085–86 (1st Cir. 1992); *Boilermaker–Blacksmith,* 96 F.Supp.2d at 1215–16; *Nordic Indus.,* 1997 WL 83742 at \*4–5. Thus, the relevant inquiry is whether the non-judgment defendants have established minimum national contacts. *Bellaire,* 97 F.3d at 826; *United Electrical Workers,* 960 F.2d at 1085; *Elite Erectors,* 212 F.3d at 1035; *Nordic Indus.* Clearly they have, and the extent of their contact with New Jersey is simply irrelevant.

◼ Second, the non-judgment defendants are alleged to be the alter ego of the judgment defendants, who are subject to the personal jurisdiction of this Court. As already noted, this contention "asserts that

corporate officers on an alter ego); *Nordic Indus.* (plaintiff could proceed against non-signatory corporate defendant on an alter ego theory); *Composition Roofers* (defendant, although not a signatory to the collective bargaining agreement, was found to be an alter ego and therefore liable for any breach in violation of the LMRA and ERISA). Even the case cited by the non-judgment defendants in support of their argument holds that a court has jurisdiction under § 301 over a non-sig-

natory defendant alleged to be an alter ego. *See Cruz v. Robert Abbey, Inc.,* 778 F.Supp. 605 (E.D.N.Y.1991). Although the court in *Cruz* would not extend § 301 liability to individual defendants alleged to be an alter ego of a party to the collective bargaining agreement, it sustained a cause of action against a corporation alleged to be "the alter ego, joint employer and successor employer" to the corporation that entered into the collective bargaining agreement. 778 F.Supp. at 610–11.

A and B are the same entity." *Elite Erectors,* 212 F.3d at 1038. Thus, the judgment defendants' contacts with New Jersey would be imputed to the non-judgment defendants. *See United Elec. Workers,* 960 F.2d at 1091 (noting that courts ordinarily respect the legal independence of a corporation in determining jurisdiction, but that the presumption of corporate separateness may be overcome by evidence of common control; where the acts of a defendant subject to personal jurisdiction may be attributed to another defendant, "the jurisdictional hurdle can be vaulted"); *Boilermaker–Blacksmith,* 96 F.Supp.2d at 1216 (finding that personal jurisdiction over alleged alter ego defendant would not offend due process "if she is, in fact, [the judgment debtor's] alter ego"). The court has both personal and subject matter jurisdiction over the non-judgment corporate defendants.

As with subject matter jurisdiction, the individual non-judgment defendants stand on different ground. Under plaintiffs' veil-piercing theory, there is no ERISA violation and consequently the individual defendants are not subject to ERISA's nationwide service provision. Nor is there a violation of the LMRA, and in any event the LMRA "makes no provision for either nationwide or worldwide service." *United Elec. Workers,* 960 F.2d at 1086 n. 5. Thus, in order to establish personal jurisdiction, the individual defendants must have minimum contacts with the State of New Jersey. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

 In their affidavits, the individual defendants allege that they have no minimum contacts with New Jersey. The plaintiffs bear the burden of proving a defendant's contacts with the forum state are sufficient to give the court personal jurisdiction over the defendant. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3rd Cir.1984). Plaintiffs have failed to refute these allegations, and have failed to bear their burden of proof. The contacts cited in plaintiffs' brief support jurisdiction against the corporate non-judgment defendants under the alter ego theory, but cannot be imputed to the individual defendants. The complaint as against Vincent and Randi Mauro must be dismissed for lack of personal jurisdiction.

### CONCLUSION

For the reasons set forth herein, the non-judgment defendants motion to dismiss is granted as to defendants Vincent Mauro and Randi Mauro, and is denied as to all other defendants. An appropriate order will be entered.